IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| vs. ) | Cr. No. 05-58 Erie |
| ) | |
| **JEFFREY EDWARD CANCILLA** ) | |

## OPINION AND ORDER

Defendant Jeffrey Cancilla is charged with one count of possessing pseudoephedrine knowing and having reasonable cause to believe that the pseudoephedrine was to be used to manufacture methamphetamine, in violation of 21 U.S.C. § 841(c)(2). Presently before the Court is Defendant's Motion to Suppress.

**I. Background**

On October 14, 2005, Mr. Cancilla had entered a Giant Eagle store in Erie, Pennsylvania, at approximately 8:20 p.m. and proceeded to the drugstore section of the store where he placed six boxes of pseudoephedrine-containing cold medication into his coat. Store security observed this conduct and detained Mr. Cancilla. At some time during his detention, Mr. Cancilla swallowed a large amount of an unknown substance. As a result, Mr. Cancilla became ill and had to be taken by ambulance to St. Vincent's Hospital in Erie, where he was admitted after informing medical personnel that he had ingested a half ounce of crystal methamphetamine.

Mr. Cancilla remained in the hospital until October 18, 2006. In the interim, Pennsylvania State Trooper Robert Youngberg, who had initially responded to the retail theft call at the Giant Eagle on October 14, 2006, filed a criminal complaint against Mr. Cancilla charging him with numerous offenses relating to the incident. Based on those charges an arrest warrant was issued and Mr. Cancilla was arrested on October 18, 2006 by Pennsylvania State Troopers. Mr. Cancilla was then transported to the Pennsylvania State Police Barracks where he was given Miranda warnings and was interviewed. Mr. Cancilla told the Troopers that he obtained cold pills containing pseudoephedrine and lithium batteries for a person named "Rocky," who cooks methamphetamine. Mr. Cancilla described himself as a "pill man" and that he traded the pills for methamphetamine. Mr. Cancilla also told the Troopers that he had driven his truck to the Giant Eagle grocery store to get pills for "Rocky."

Later that day, Trooper William McClellan applied for and obtained a search warrant to search a 1991 Chevrolet S-10 Blazer for methamphetamine, any precursor chemicals used to manufacture methamphetamine, records associated with the manufacture or sale of controlled substances, weapons, and currency. ("Application for Search Warrant with Affidavit of Probable Cause," attached as Ex. 1 to Defendant's Motion to Suppress.) On October 18, 2005, Defendant's Chevrolet S-10 Blazer was searched by Pennsylvania State Troopers pursuant to a Commonwealth of Pennsylvania search warrant issued by a District Justice. The search of the vehicle resulted in the seizure of over 1,300 pseudoephedrine pills, thirteen empty cold tablet blister packs, eight lithium batteries, a package of coffee filters, a digital scale, and various other items.

In his motion to suppress evidence, Defendant argues that this search and seizure was unconstitutional and violative of his rights under the Fourth Amendment to the Constitution because the Affidavit of Probable Cause failed to set forth a substantial basis for determining whether probable cause existed.

## II. Legal Analysis

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizure, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. Amend. IV.

When making a probable cause determination, a magistrate must ascertain "whether there is a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Conley, 4 F.3d 1200, 1205 (3d Cir. 1993) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983) (internal citations omitted)), cert. denied, 510 U.S. 1177 (1994). "The warrant must also describe the things to be seized with sufficient particularity and be 'no broader than the probable cause on which it is based.'" United States v. Zimmerman, 277 F.3d 426, 432 (3d Cir. 2002) (quoting United States v. Weber, 923 F.2d 1338, 1342 (9th Cir.1991)). The test set forth in Gates requires that the issuing magistrate "make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information" there is probable cause to support a warrant. Gates, 462 U.S. at 238.

3

"The duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." Gates, 462 U.S. at 236 (quoting Jones v. United States, 362 U.S. 257, 271 (1960)). A warrant must be upheld "as long as there is a substantial basis for a fair probability that evidence will be found." Conley, 4 F.3d at 1205. Reviewing courts must not "simply rubber stamp a magistrate's conclusions." United States v. Tehfe, 722 F.2d 1114, 1117 (3d Cir. 1983) (cert. denied sub nom., Sanchez v. United States, 466 U.S. 904 (1984)). However, the United States Supreme Court has directed that "resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." Conley, 4. F.3d at 1205 (quoting United States v. Ventrusca, 380 U.S. 102, 109 (1965) (quoted with approval in Gates, 462 U.S. at 237 n.10)).

Mr. Cancilla first argues that the affidavit of probable cause failed to establish that the vehicle listed on the face of the warrant was the vehicle Mr. Cancilla drove to the Giant Eagle store. He also argues that the affidavit of probable cause failed to establish that there was probable cause to believe that any contraband would be found in vehicle.

The supporting affidavit must be read in its entirety and in a common sense and nontechnical manner. Gates, 462 U.S. at 230-31. Read in this light, the affidavit sets forth ample facts to support the district justice's finding of probable cause to believe that the vehicle to be searched was the truck that Mr. Cancilla drove to the Giant Eagle store, and that contraband would be discovered in Mr. Cancilla's vehicle.

### A. Identification of Vehicle

The face of the warrant describes the premises to be searched as a "1991 Chevrolet S-10 Blazer, red in color with a black driver's door. Ohio registration DC20WU, VIN# 1GNDT13Z6M2174388." (Application for Search Warrant, attached as Ex. 1 to Defendant's Motion to Suppress.) The Affidavit of Probable Cause states in its last sentence that "Cancilla stated that he drove his vehicle, truck, to the Giant Eagle." (Id.)

Mr. Cancilla argues that there was not probable cause for the district justice to issue the search warrant because the Affidavit of Probable Cause failed to establish that the truck listed on the face of the search warrant was the truck Mr. Cancilla drove to the Giant Eagle store. Specifically, he argues that it is "impossible to determine from the affidavit that the truck sought to be searched pursuant to the warrant was the truck Mr. Cancilla drove to the Giant Eagle on October 14, 2005." (Defendant's Motion to Suppress, at 4.) He argues that since the affidavit contains no description of the vehicle, the magistrate was unable to identify the vehicle listed on the face of the warrant as Mr. Cancilla's vehicle. In addition, he argues that neither the face of the warrant nor the affidavit explain how Trooper McClellan determined that the Chevrolet S-10 Blazer was owned by Mr. Cancilla. Finally, he argues that the issuing magistrate cannot accept Trooper McClellan's bald claim on the face of the warrant that Mr. Cancilla owned the Chevrolet S-10 Blazer. (Defendant's Motion to Suppress, at 4, citing Giordenello v. United States, 357 U.S. 480, 485-86 (1958).)

Here, the affidavit of probable cause explains that the affidavit is based on Trooper McClellan's own participation on the investigation, information provided by "the owner of the property to be searched," and Trooper Youngberg. (Affidavit of Probable Cause, Ex. 1 to Defendant's Motion to Suppress.) The affidavit describes that on October 14, 2005, Trooper

5

Youngberg was dispatched to the Giant Eagle store in response to a retail theft of six boxes of cold pills that contained pseudoephedrine, that Mr. Cancilla swallowed a substance, and that Mr. Cancilla was rushed to the hospital where he remained in the ICU until October 18, 2005. (Id.) The affidavit further explains that Mr. Cancilla was arrested on October 18, 2006 pursuant to an arrest warrant, transported to the Pennsylvania State Police barracks, given Miranda warnings, and was interviewed. (Id.) The affidavit also sets forth that Mr. Cancilla informed the Troopers that he

> steals or buys cold pills containing pseudoephedrine so that they can be used for the clandestine manufacturing of Methamphetamine. Cancilla described himself as "the pill man" and stated that he trades the pills for Methamphetamine which he himself then sells. Cancilla admitted that the object or substances he swallowed was a large quantity of Methamphetamine, Cancilla admitted to also obtaining lithium batteries for an individual for the purpose of manufacturing Methamphetamine. Lithium is the key ingredient in the Nazi or Birch method of clandestine manufacturing of Methamphetamine. Cancilla stated he drove his vehicle, truck, to the Giant Eagle.

(Id.)

Under the totality of the circumstances it is an entirely reasonable inference for the district justice to believe that the vehicle listed on the face of the warrant is the vehicle that Mr. Cancilla drove to the Giant Eagle store. The affidavit clearly states that Mr. Cancilla drove his vehicle, a truck, to the Giant Eagle store. On the face of the warrant the premises to be searched is identified as a specific type of truck. The "owner of the property to be searched," referenced in the Trooper's affidavit, can be no one other than Mr. Cancilla. A common sense reading of the affidavit and warrant leads to the inevitable conclusion that the Chevrolet S-10 blazer listed on the warrant that the Trooper sought to search is the truck Mr. Cancilla drove to the Giant Eagle store.

### B. Probable Cause that Contraband Would be Found in the Vehicle

Next, Mr. Cancilla argues that the affidavit fails to establish probable cause to believe any contraband would be found in the vehicle. Mr. Cancilla argues that the information in the affidavit establishes only

> (I) that he would buy or steal pseudoephedrine pills to trade for methamphetamine;
>
> (ii) that he failed in his attempt to steal pseudoephedrine pills from the Giant Eagle store; and
>
> (iii) that he had a large amount of methamphetamine in his possession, which he then ingested.

Mr. Cancilla argues that this information does not establish that contraband would be found in his vehicle, but rather shows that there was no reason to believe that contraband would be found in the vehicle. In support of this argument, Mr. Cancilla explains that the information in the affidavit shows the following:

> (I) since he had a large amount of methamphetamine on his person, Mr. Cancilla was storing the drug on his person, not in his vehicle, thus there is no reason to believe he would have any methamphetamine in his vehicle;
>
> (ii) the large amount of methamphetamine on his person indicates that he had recently traded pills for methamphetamine, so there is no reason to believe that any pseudoephedrine pills would be found in the vehicle;
>
> (iii) since Mr. Cancilla described his role as providing pills, there is no reason to believe there would be any other precursor drugs for methamphetamine in the vehicle; and
>
> (iv) there was no information in the affidavit regarding firearms and no information that people engaged in the sale of drugs would keep records in their vehicle instead of their homes, thus there is no reason to believe there would be either firearms or records in the vehicle.

"Gates requires that a court considering the sufficiency of an agent's affidavit look at the 'totality of the circumstances,' and, in employing this flexible standard, the Supreme Court has explained that the 'task of the issuing magistrate is simply to make a practical,

7

common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . , there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Ritter, 416 F.3d 256, 262-263 (3d Cir. 2005) (quoting Gates, 462 U.S. at 238-39 (citations omitted)). "'Direct evidence linking the place to be searched to the crime is not required for the issuance of a search warrant.'" United States v. Hodge, 246 F.3d 301, 305 (3d Cir. 2001) (quoting Conley, 4 F.3d at 1207). "'Instead, probable cause can be, and often is, inferred by "considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide" the fruits of his crime.'" Hodge, 246 F.3d at 305 (quoting United States v. Jones, 994 F.2d 1051, 1056 (3d Cir. 1993), quoting United States v. Jackson, 756 F.2d 703, 705 (9th Cir. 1985)). An "issuing court need only conclude that it would be reasonable to seek the sought-after objects in the place designated in the affidavit; a court need not determine that the evidence is in fact on the premises. Ritter, 416 F.3d at 263 (citing Conley, 4 F.3d at 1205) (other citations omitted).

The reasonable inferences that may be drawn from the facts presented in the affidavit could lead the district justice to reasonably conclude that the contraband would be found in Mr. Cancilla's truck. The affidavit informed the district justice that Mr. Cancilla was caught trying to steal pseudoephedrine pills, and that Mr. Cancilla admitted that he in fact does steal or buy pseudoephedrine pills to trade for methamphetamine, which he then sells. The affidavit also informed the district justice that Mr. Cancilla had a large quantity of methamphetamine on him at the time he was detained, which he ingested. In addition, the district justice was informed that Mr. Cancilla also admitted that he obtained lithium batteries to give to an individual in order to make methamphetamine. Finally, the affidavit informed

the district justice that Mr. Cancilla drove his truck to the Giant Eagle store where he was caught attempting to steal pseudoephedrine pills.

Based on these facts it was reasonable for the district justice to infer that Mr. Cancilla was engaged in an *ongoing* activity of obtaining pseudoephedrine pills and lithium batteries to be used in the illegal manufacture of methamphetamine. An ongoing activity of obtaining these items leads to the reasonable belief that Mr. Cancilla would not keep all of these items on his person when attempting to steal pseudoephedrine pills, and that he must keep them somewhere else. Mr. Cancilla admitted that he drove his truck to the Giant Eagle store, thus it is reasonable to infer that he would store any of these items, as well as other precursors, in that truck.

The fact that the affidavit does not state that Mr. Cancilla informed the Troopers that he also obtains other precursors to be used in the illegal manufacture of methamphetamine is not fatal. The affidavit specifically established through Mr. Cancilla's admissions that he obtains pseudoephedrine pills and lithium batteries. It is reasonable to infer from those admissions that Mr. Cancilla might also be involved in obtaining any other precursors to the illegal manufacture of methamphetamine.

It was also reasonable for the district justice to infer that a person involved in an ongoing activity of obtaining precursors to the illegal manufacture of methamphetamine, who had a large quantity of methamphetamine on his person, and who also sells methamphetamine, might also have methamphetamine in his vehicle. Finally, the facts set forth in the affidavit, while not giving direct evidence, support the reasonable inference that Mr. Cancilla was involved in selling drugs, an activity in which firearms are commonly used, and in which records are commonly kept.

The cumulative evidence presented to the district justice in the affidavit shows that there was a substantial basis from which the district justice could infer that a search of Mr. Cancilla's truck would yield the drug-related evidence.

### III. Conclusion

After reviewing the contents of the Affidavit of Probable Cause, the Court finds that the district justice who issued the warrant had a substantial basis for determining that probable cause existed. Accordingly, Defendant's motion to suppress is denied. An appropriate Order follows:

### **ORDER**

AND NOW, this __23rd__ day of August, 2006, it is hereby ORDERED, ADJUDGED AND DECREED that Defendant Jeffrey Edward Cancilla's Motion to Suppress With Citation to Authorities (Doc. No. 24) is DENIED.

/s/ Maurice B. Cohill, Jr.
Maurice B. Cohill, Jr.
Senior District Court Judge

cc: counsel of record